## BALLARD v. NYE et al.

### L. A. No. 1145; July 7, 1902.

69 Pac. 481.

Mortgages—Payment — Insurance — Agency.— Defendants executed a mortgage to plaintiff, the insurance on the building being made payable to her. The building burned, and the person who had acted as agent for defendants in negotiating the loan wrote her for the mortgage, to use in adjusting and collecting the insurance. She refused to send the mortgage to him, but sent it to N.—one of the defendants. After the insurance was adjusted, N. wrote her that the company had the money, which could not be turned over to anyone but herself, and sent her a sum sufficient, with such insurance money, to pay the mortgage. She answered, acknowledging receipt of the money sent, and that she would soon go to the city to receive the insurance money. When she went, N.'s wife stated that he was absent, and referred plaintiff to such former agent. When she went to him, he took her to a bank, and directed a transfer from his account to hers of a sum $200 less than the insurance money, and, on her objecting to the amount, stated that the balance would be paid in a few days. She thought she was dealing with the agent of defendants, and made no inquiry as to how he came by the money, and did not know that, pretending to act as her agent, he had surrendered the policy, received and receipted for the check in her name, and forged her indorsement thereto. Civil Code, section 1478, provides that "performance of an obligation for the delivery of money only is called payment." Held, that the insurance money was simply additional security for the debt, and that there had been no payment of the debt, except as to the money actually received by plaintiff.

Mortgage—Payment—Insurance—Agency.—The Receipt, Without Inquiry, of a part of the insurance money from the one who had pretended to act as plaintiff's agent, and without notice or knowledge that he had so acted, was not a ratification of his acts.

Mortgage—Payment—Agency—Innocent Sufferers.—Defendants were familiar with such pretended agent's disposition to keep things which did not belong to him, and having placed the policy and mortgage in his hands after the mortgage was sent to them by plaintiff, and thereby enabled him to get control of the money, should be the sufferers, rather than plaintiff, under Civil Code, section 3543, providing that, when one of two innocent persons must suffer by the act of a third, he by whose negligence it happened must be the sufferer.

APPEAL from Superior Court, Los Angeles County; M. T. Allen, Judge.

Action by Stella Ballard against Charles W. Nye and others. From a judgment for defendants and from an order denying a new trial plaintiff appeals. Reversed.

Wm. Mattoon, W. H. Savage and M. C. Hester for appellant; Hunsaker & Britt for respondents.

GRAY, C.—This is an action for a balance of some $200, besides interest, due on a promissory note, and to foreclose a mortgage given by the above-named defendant and his wife, also a defendant herein, to secure the payment of said note. The trial court found that the note had been entirely paid, and gave judgment for defendants. The plaintiff, contending that the finding of payment is contrary to the undisputed evidence, appeals from the judgment and from an order denying her a new trial.

The defendants Nye and his wife duly executed the note and mortgage sued on to the plaintiff. Some six months thereafter a house included in the mortgage was burned. Upon this house defendants had previously procured an insurance policy for $1,000 which policy was by indorsement thereon made payable to the plaintiff, as mortgagee,'' as her interest may appear.'' After the fire the insurance company adjusted the loss and allowed plaintiff $719.44 on account thereof. On the same day of this allowance Nye wrote from San Francisco to plaintiff, at Los Angeles, telling her of the allowance, and that the money was in the hands of the insurance company for her, and could not be turned over to any person but herself, and inquired of her if he should request the insurance company to send her money or draft to her at Los Angeles. He also inclosed a money order for $30 to her, and stated in the letter that this amount, together with the amount which the insurance company had retained for her, would pay the note and mortgage in full. Soon thereafter the plaintiff wrote to Nye, acknowledging receipt of the money order, and stating that she was coming up to San Francisco before long, and that the money could remain as it then was until she came up, when she would attend to the matter herself. Some three months later plaintiff went to San Francisco and called on the Nyes. Mr. Nye was not at home, but Mrs. Nye stated to her that she would have to see a Mr. Hayford about her money; that Nye had nothing more

to do with it; and Mrs. Nye directed her where to find Mr. Hayford. This Mr. Hayford had previously acted as agent of the Nyes in negotiating the loan from plaintiff on the note and mortgage; and, soon after the fire occurred, Hayford wrote to plaintiff from San Francisco to send him the mortgage, that the insurance company might be able to see what her interest was in the property. In response to this letter she sent the mortgage to Mr. Nye, thus declining to send it to Hayford, as he had requested. In pursuance of the directions received from Mrs. Nye, plaintiff found Hayford, and asked him about her money; and, after several days' delay, Hayford took her to the Union Trust Company's Bank, and requested an officer of the bank to transfer from his (Hayford's) account to her account $520. She said to him that that amount was not all that was due her, and that she wanted it all. He admitted that there was something like $200 more due her, but made some excuse for not having it all paid at that time, and said that the balance would be paid her in a day or two. The plaintiff did not know or understand how the money came to be in the bank in Hayford's name instead of in her own name, but supposed that he was in some way acting for the Nyes in paying the money. She had given Hayford no authority to act as her agent in any way, and, did not then know that Hayford had assumed to act as her agent, and had drawn the money allowed her by the insurance company, and given them a receipt in her name. All this, however, Hayford had done. She knew that this was a part of the insurance money allowed her, but how it came into the hands of Hayford she seems not to have known, but supposed, as appears from her testimony, that he was handling it as the agent of the Nyes. Plaintiff testifies that she did not agree to release the Nyes from the balance that was unpaid, and never agreed to look to Hayford for such balance. She made no inquiry as to where Hayford got the money. She made several efforts thereafter to get the balance of the money from Hayford, but failed, and thereafter made demand upon the Nyes, and on their failure to pay, brought this action. Plaintiff seems to have misunderstood the purport of Nye's letter to her wherein he stated that the money was with the insurance company, for she testifies: "When I went with Hayford to the bank, I supposed the money that had been allowed me on the policy by the insurance company

had been deposited in the bank in my name, and I expected to receive it at the bank, and to give to Hayford, as attorney for Nye, the note and release of the mortgage.'' She also testifies directly to the effect that Nye told her in his letter that the insurance money was in a bank in San Francisco for her; but it is clear that in this regard she must have misunderstood the letter, for the money appears not to have been placed in a bank for her, except the amount transferred by Hayford to her account. The above-recited facts appear from the evidence without substantial conflict, and these are all the facts material to the question of payment. It is earnestly contended by appellant that these facts do not warrant the finding of payment, except as to the money actually received by plaintiff. We agree with this contention.

1. As is stated in respondents' brief: ''The indorsement on the policy, making the loss payable to the plaintiff as her interest might appear, operated as an assignment of the policy to her, authorized her to collect the money in case of loss, and to bring suit thereon in her own name. It conferred on plaintiff precisely the same right and interest in the policy which she would have had if, without such words, the mortgagor had assigned the policy to her as collateral security for the mortgage debt.'' Appellant stood then, after the fire, in the position of a creditor with her claim doubly secured; and it must be presumed that she remained in this position until it is shown either that the claim was in fact paid and satisfied, or that she consented to alter her position. Her correspondence with Nye is not evidence of any agreement to discharge the mortgage and look only to the insurance company for her money, because no such thing is even intimated in either Nye's letter or in appellant's reply thereto. Nye's letter gave her no new rights against the insurance company. She had a right of action against it for her money to the extent of its liability, as she well knew before she received that letter, and she had nothing more or less than that after she received it. The company had not agreed, so far as the evidence goes, to hold the money as her agent, nor did she agree that it should be treated merely as her agent, with her money in its hands. Her letter goes no further than to manifest a purpose to personally collect her claim from the company. She had a right to look to one or both these securities for payment of her claim as she saw fit. It was natural and proper

that she should look first to the insurance company to the full extent of its liability, and by so doing she waived no right against the other security. Section 1478 of the Civil Code defines "payment" as follows: "Performance of an obligation for the delivery of money only is called payment." The delivery of money to plaintiff is not shown by the correspondence referred to, nor is anything equivalent thereto made to appear thereby.

2. Nor do we think there is anything in the evidence to show that appellant intended to ratify the assumed agency of Hayford in drawing and receipting to the insurance company for the money in appellant's name. As to this matter, respondents say: "But it is immaterial whether the plaintiff, at the time she accepted the $520 from Hayford, did in fact know that Hayford had received the check from the insurance company, forged her indorsement, and cashed it. She was aware that she alone had the right to collect the money from the insurance company. She knew that the money which she received from Hayford was a part of the insurance money, and that he transferred it from his account to her account. She ought to have known how Hayford obtained the money. As she accepted it from him without inquiry, her acts constitute a valid ratification. Ignorance which is intentional or deliberate will not defeat the principal's ratification. From this evidence the court might well have found that plaintiff meant to take upon herself, without further information, responsibility for the conduct of Hayford, and to adopt all his acts." A careful examination of the evidence leads us to think that it does not support the conclusions reached in the quoted statement. Why should she suppose that Hayford was acting or had assumed to act as her agent, when from the beginning he had admittedly acted as agent of her debtors? He had not only negotiated the loan for them, but when the fire occurred he had written her for the mortgage, to all appearances as the agent of the Nyes or the insurance company, or perhaps for both. That Mrs. Nye referred appellant to Hayford in the absence of Nye is not disputed. It was not unreasonable for a woman in appellant's position to suppose that Hayford, having received the money as the agent of her debtors, had deposited it temporarily in the bank in his own name, until such time as he could make actual payment of it to the creditor, and receive satisfaction of the

mortgage, and take from her the note for cancellation. Why should appellant have thought or presumed that Hayford had committed the crime of signing her name without authority, that he might get into his possession money that he had no right to possess? For appellant to think that she was treating with the agent of her debtors when she received the money from him at the bank was perfectly reasonable, and consistent with all the circumstances of the case as they appeared to her at the time—and there is nothing to cast discredit on or contradict her sworn statement that at that time, and until long after the commencement of this action, she had no knowledge of Hayford's previous unauthorized acts. In using Hayford as their agent in negotiating the loan, and in subsequently referring her to him without notifying her that he was no longer their agent, respondents made it possible for appellant to be deceived by him; and they should not thereafter be heard to say: ''You ought to have known that he was not acting as our agent, but as your agent. You should have inquired and ascertained whether things were in fact as we had made them appear to you.'' The argument of respondents seems to concede that knowledge of the facts of pretended agency or its equivalent is a necessary condition of a valid ratification of such agency. ''To constitute a ratification the principal must be acquainted with that which has actually been done'': Dean v. Bassett, 57 Cal. 640. ''Before ratification can be inferred, such knowledge must be shown'': Maze v. Gordon, 93 Cal. 61, 30 Pac. 962. It was not sufficient that appellant knew that Hayford had received money that was coming to her from the insurance company, but it should have been shown that she knew or ought to have known that he acted as her agent in the matter. The evidence showing as it does without conflict that appellant had no knowledge of the previous unauthorized acts of Hayford, and that her want of knowledge was in no way attributable to any negligence on her part, the finding of payment as to any amount in excess of $550 cannot be upheld on any theory of the agency of Hayford being created by subsequent ratification. The finding of payment is for these reasons in direct contradiction of the evidence.

It is recited in the receipt given by Hayford to the insurance company in the name of appellant that ''in consideration of said payment said policy is surrendered to said com-

pany for cancellation, and all further claim by virtue of said policy forever waived.'' This would indicate that Hayford had received the policy from the respondents, and had surrendered it to the insurance company. He could not have received the policy from appellant, for the evidence shows without dispute that she never had it. The strong probabilities are, also, that Hayford obtained the mortgage from Mrs. Nye, and that it was by reason of his possession of the policy and the mortgage, both doubtless obtained from respondents, that he was enabled to deceive the insurance company into thinking that he was the authorized agent to receive and receipt for the money. At the same time the Nyes seem to have been familiar, from personal experience, with Hayford's disposition to keep things that did not belong to him. · If these facts did not furnish a good ground for invoking the maxim that, ''where one of two innocent persons must suffer by the act of a third, he by whose negligence it happened must be the sufferer'' (Civ. Code, sec. 3543), they at least tend to render more satisfactory to the court the general conclusion already stated.

On the strength of the foregoing conclusions, it is also apparent that the court erred in admitting in evidence the check and receipt to which the name of appellant had been signed without authority.

The judgment and order appealed from should be reversed.

We concur: Cooper, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are reversed.